# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRENDA HARRIS, et. al., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AMERICAN GENERAL FINANCE, INC., ) <br> ) <br> Defendant. ) <br> ) | **CIVIL ACTION** <br><br> No.  02-1395-MLB |

## MEMORANDUM AND ORDER

Plaintiffs Brenda Harris and Larry Tolsma filed suit against American General Finance (AGF) alleging reckless infliction of emotional distress, violations of the Real Estate Procedures Act ("RESPA"), 12 U.S.C. § 2605(3), and the Kansas Consumer Protection Act ("KCPA"), Kan. Stat. Ann. § 50-623 et seq. This case comes before the court on the parties' cross-motions for summary judgment. (Docs. 21. 23).  The matter has been fully briefed and is ripe for decision. (Docs. 21, 22, 26, 27, 28).  Defendant's motion is GRANTED in part and DENIED in part and plaintiffs' motion is DENIED, for reasons set forth herein.

## I.   FACTS[1]

Plaintiffs have had a debtor/creditor relationship with AGF since 1994.  In February 2001 and December 2001, plaintiffs refinanced their home and car loans with AGF.  Also, during December 2001, plaintiffs unsuccessfully attempted to refinance their home loan with another

---

[1] The facts contained in this section are undisputed.  The remaining disputed relevant facts will be discussed during the court's analysis.

lender. Due to the unsuccessful refinance, plaintiffs did not make their December 2001/January 2002 home loan payments and AGF added these payments to the back end of their loan without any penalty. When making payments to AGF, plaintiffs would note on the payment the amount to be applied to the home and/or car loan. (Docs. 21 at 3-4; 22 at 2.)

In January 2002, Tolsma terminated his full time employment in order to care for Harris. In October, Tolsma applied for disability insurance, which was available on the car loan but not on the home loan. The insurer honored his claim in the amount of $4800. The funds were disbursed to AGF to cover plaintiffs' obligations from February 15 to September 29, 2002. Plaintiffs directed AGF to use the funds to bring both accounts current and return the remaining balance to plaintiffs. Instead of returning the balance to plaintiffs, AGF retained the funds and applied them to future monthly obligations. (Docs. 21 at 6-8; 22 at 2, 5-6.)

On at least one occasion, on October 11, 2002, AGF ignored plaintiffs' directions included on the memo portion of their check and transferred $147.11 from plaintiffs' car loan payment to their mortgage loan. Plaintiffs sent at least four letters to AGF and, on at least three of those occasions, questioned AGF as to their ignorance of plaintiffs' payment directions. AGF responded to all but the last letter. (Docs. 21 at 5-6; 22 at 3-6.)

Plaintiffs filed this action alleging violations of the KCPA, RESPA, and a claim for reckless infliction of emotional distress. Plaintiffs also sought a declaratory judgment for an accounting as a result of the misapplication of plaintiffs' funds. AGF moved for

-2-

summary judgment on all claims and plaintiffs moved for partial summary judgment.

## II.  SUMMARY JUDGMENT STANDARD: FRCP 56

Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "shows] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment.[2] Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

## III. ANALYSIS

### A.   Declaratory Judgment

---

[2] Even though the parties have filed cross-motions for summary judgment, the legal standard does not change. See United Wats, Inc. v. Cincinnati Ins. Co., 971 F. Supp. 1375, 1382 (D. Kan. 1997). It remains this court's sole objective to discern whether there are any disputes of material fact, see Harrison W. Corp. v. Gulf Oil Co., 662 F.2d 690, 692 (10th Cir. 1981), and the court will treat each motion separately. See Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000).

AGF asserts that this claim should be dismissed since it has previously submitted an accounting or, in the alternative, should be decided by the court sitting without a jury.  Plaintiffs respond that the accounting submitted by AGF is not proper or accurate since AGF has not applied the funds as plaintiffs directed.  Based on the differences in plaintiffs' analysis of their account and AGF's prior accounting, the court finds that there is a genuine dispute as to how the funds should have been applied and how they were actually applied. (Docs. 24, exh. DD, 26, exh. C).  Therefore, granting of summary judgment to either party would be improper at this time.  However, both parties agree than an accounting is an equitable remedy. Therefore, plaintiffs shall file, on or before July 15, 2005, a statement setting forth their points of disagreement with defendant's accounting and the reason for their disagreement.  Defendant may respond by July 22, 2005.  If plaintiffs fail to comply, defendant's motion for summary judgment will be granted on plaintiffs' declaratory judgment claim.

**B.   RESPA**

The RESPA statute provides the following:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

-4-

>  (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
>
>  Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall–
>
>  (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
>  (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–
>  (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>  (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
>  (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>  (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>  (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e).

Plaintiffs assert that they submitted qualified written requests to AGF on June 28, July 1, September 26 and October 14, 2002. On June 28, plaintiffs' counsel sent the following letter to AGF:

>  Your company is abusive in trying to collect the payments owed by Ms. Harris and Mr. Tolsma. I understand last week the company called the home 17 times in one week in reference to their debt. Someone also left the enclosed note on the door on June 20, 2002. What is the legitimate purpose of calling 17 times in one week, the latest call around 9:25 p.m. from the employee's home? On May 21, 2002, you refused to accept a payment on the vehicle and

>    demanded the funds be applied to the house payment. I
>    believe the law requires you to honor the debtor's
>    directions on how their funds are to be applied. In the
>    future, you will only call twice per month about their
>    payments and will speak with Mr. Tolsma only or he will get
>    back with you after your call. You will make no calls
>    after 6:00 p.m.
>       When or if you file a foreclosure suit, I will most
>    likely file a counter-claim based on the KCPA violations
>    and intentional infliction of emotion [sic] distress as you
>    are adding to the distress Ms. Harris has experienced from
>    the Ameriquest suit (see attached petition). I am going to
>    consider this matter further and, assuming American General
>    is not a Kansas corporation, will likely join American
>    General as a defendant on the emotional distress claim.

(Doc. 24, exh. N).

Plaintiffs assert that the letter meets the statutory definition of a qualified written request to the extent it speaks to plaintiffs' directions regarding application of payments. Plaintiffs' counsel's letter does not meet section 2605(e)(1)(B)(i) since it failed to include the account numbers of the loans. Counsel's letter, moreover, fails to meet the requirements of section 2605(e)(1)(B)(ii) since there is no statement that the account is in error, nor does the letter request any information from the lender. The letter instead focused its concern on the collection efforts of defendant's agents and threats by plaintiffs' counsel to retaliate. A letter cannot be "qualified" under the statute if it does not relate to the servicing of the account, i.e. the allegation of an inaccurate account. MorEquity, Inc. v. Naeem, 118 F. Supp.2d 885, 901 (N.D. Ill. 2000). Both defendant and the court have the right to expect a party represented by counsel to know about and follow statutory requirements. Accordingly, as a matter of law plaintiffs' letter does not meet the statutory definition of a qualified written request and defendant's motion for summary judgment is granted as to the June 28,

2002 letter.[3]

On July 1, plaintiffs sent the following letter to AGF:

> Each week we will be sending some kind of payment, please note which account we would like to be credited with that payment, will be wrote in the memo part of the check.

(Doc. 24, exh. P)(grammatical errors in original).

This letter is not a qualified written request since it does not state any reasons that the account is in error. The letter seems to be an explanation as to future payments. Accordingly, defendant's motion for summary judgment as to the July 1 letter is granted.

On September 26, plaintiffs' counsel sent the following letter to AGF:

> In April 2002, Brenda Harris went in to give instructions on, and make a payment on the above car loan, but Ms. Lucas insisted and applied the payment on the house loan. While there, she asked Ms. Lucas to verify that there was disability insurance on Mr. Tolsma, but after some "checkin"; Ms. Lucas said there was no such coverage. I believe Mr. Tolsma's doctor will supply a statement that he is disabled from working due to severe depression, and they recently found in their documents two disclosure statements that, if applicable, clearly show Mr. Tolsma had such coverage with your sister company, American General Insurance, at a charge of about $2,000.00, which has been paid in their monthly payments. Would you please do the following:
>
> 1. Send them a claim form to immediately process a disability claim for Mr. Tolsma.
> 2. Inquire whether any such claim can be honored back to April 2002.
> 3. Explain why Mr. Lucas advised there was no such coverage, when in fact there was, if she admits so

---

[3] Any argument that plaintiffs did not receive defendant's response is irrelevant since defendant is only required to respond to a qualified written request. In any event, defendant's counsel responded to plaintiffs' counsel dated July 1, 2002. Under the circumstances, it would have been improper for defendant's counsel to write directly to plaintiffs. Rather, it was up to plaintiffs' counsel to inform his clients of defendant's counsel's letter and the court assumes that he did so.

-7-

>                 advising Ms. Harris.
>                 Please respond as soon as possible.

(Doc. 24, exh. V).

The September 26 letter meets the statutory definition of a qualified letter, by referencing an error of misapplication of funds and failure to disclose the disability insurance.  On September 27, AGF responded that Ms. Lucas thought that Ms. Harris was questioning the mortgage account, which does not have disability coverage, but coverage was provided on the car account.  AGF did not discuss the misapplication of funds.  However, AGF had 60 days, excluding holidays, Saturdays and Sundays, in which to take action and respond. By the court's calculations, AGF had until December 20, 2002, to send a qualified response.  Plaintiffs filed suit on November 4, 2002, and, as such, any RESPA claim pertaining to the September 26 letter was premature.  Defendant's summary judgment motion as to the September 26 letter is granted.

Similarly, even if plaintiffs October 14 correspondence was a qualified written request, defendant's motion for summary judgment is granted because any action premised on that letter was premature. AGF's notice of receipt was not due until November 12, 2002, and its qualified response was not due until January 10, 2003.

In sum, defendant's motion for summary judgment on plaintiffs' RESPA claims is granted.

   **C.   KCPA**

Plaintiffs have set forth essentially three violations of the KCPA: first, AGF improperly applied their payments and failed to correct their accounts; second, AGF falsely represented that

-8-

plaintiffs did not have disability insurance; and, third, AGF engaged in harassing collection efforts.  Even though the issue of whether a deceptive act prohibited by K.S.A. 50-626 has occurred typically is a jury question, summary judgment is appropriate when there is no evidence of deceptive conduct.  Gonzales v. Associates Financial Service Co. of Kansas, Inc., 266 Kan. 141, 166, 967 P.2d 312 (1998). Whether a deceptive act is unconscionable is a question of law. K.S.A. 50-627(a).  Willman v. Ewen, 230 Kan. 262, 267, 634 P.2d 1061 (1981).

The court finds that summary judgment as to the first and second claims is improper.  Plaintiffs have established a pattern of directing that their payments be allocated to certain accounts and defendant admits to defying this direction in at least one instance. Plaintiffs have also put forth evidence that they were misled by defendant's employee as to the availability of insurance.  This evidence is sufficient to establish a question as to whether AGF deceived plaintiffs.

The allegation that the harassing calls violate the KCPA, however, cannot survive summary judgment.  While this court has allowed a claim proceed under the KCPA for creditor collection calls, the facts presented to this court are legally insufficient to demonstrate either a deceptive or unconscionable act.  In Lowe v. Surpas Resource Corp., 253 F. Supp.2d 1209, 1231 (D. Kan. 2003), the plaintiff put forth evidence of the calls' content and the tactics used by the creditor.  Plaintiffs have only established that AGF may

have called them up to seventeen times in one week.[4] However, plaintiffs have failed to provide evidence of the substance of those calls. Phone calls, standing alone, do not constitute a deceptive or unconscionable act. Accordingly, AGF's motion for summary judgment on plaintiffs' claim that the collection efforts by AGF violated the KCPA is granted.

### D. Conversion

Both plaintiffs and defendant seek summary judgment on plaintiffs' claim for conversion. "Conversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights." Bomhoff v. Nelnet Loan Servs., Inc., --- Kan. --- , 109 P.3d 1241, 1246 (2005). Plaintiffs assert that the payment sent from the insurer to AGF was converted by AGF when AGF failed to comply with plaintiffs' instructions. Defendant responds that the insurance payment was involuntary and, as such, plaintiffs could not direct the manner in which AGF applied the funds. Moreover, defendant asserts that keeping the funds to apply to future obligations was in accordance with its business policy. AGF has argued that two Kansas Supreme Court cases support its argument.

In Moore v. State Bank of Burden, 240 Kan. 382, 386-87, 729 P.2d 1205, 1209 (1986), the Kansas Supreme Court held that application of funds to a past-due indebtedness, even if erroneous, is not conversion. The plaintiff in Moore brought a conversion action against the bank after it applied funds in her checking account to

---

[4] This fact is controverted by AGF. (Docs. 21 ¶ 27, 28 ¶ 27.)

set-off the amount she owed to the bank when she defaulted on a loan. The funds were electronically transferred to her account from the Social Security Administration.  Although the facts in this case also contain an electronic transfer of money, every other aspect is dissimilar.  Plaintiffs received the funds in question in order to pay for their obligation during the months of February to September 2002. Plaintiffs had already made most of those payments with separate funds.  The insurance payment, in essence, constituted a refund for prior payments.  Unlike the plaintiff in Moore, once the insurance was applied to the outstanding balance, plaintiffs were no longer in default.  Moreover, the bank in Moore had a legal right to set-off the funds, whereas AGF has not asserted that it had a legal right to keep the funds and apply them to future obligations.

AGF also cites Bomhoff, supra, to support its argument.  The plaintiff in Bomhoff brought an action in conversion after the lender applied her payment first to interest and then to principal.  109 P.3d at 1246.  The lender did this in accordance with federal regulations. Moreover, the lender reminded the plaintiff of this authority in the account statements. While defendant has asserted that it retained the excess funds in accordance with its business policy, it has failed to provide evidence of that policy and that plaintiffs were aware and agreed to the policy.  On the other hand, plaintiffs have also failed to meet their burden by not demonstrating that they did not agree to the bank's business policy or that the policy was nonexistent.

Defendant has also asserted that plaintiffs' claim for conversion fails since a debtor cannot dictate the manner in which involuntary payments are applied.  (Doc. 28 at 9-11).  While Mr. Tolsma's

-11-

disability was not voluntary, the insurance proceeds do not automatically become involuntary. Rather, unlike the authority cited by defendant, the collateral of the loan was never at risk, a situation which is consistently present in involuntary payments. The payments were made to cover plaintiffs' obligation for a designated period of time. Once the account was current for that time period, plaintiffs were entitled to a reimbursement of the funds disbursed to defendant absent any legal authority or business policy that allowed otherwise.

Since plaintiffs have clearly established that AGF used a portion of the insurance proceeds for payments other than those designated by the insurer, summary judgment for defendant is inappropriate. Summary judgment for plaintiffs is also inappropriate since plaintiffs have failed to establish that defendant's actions were not in accordance with a policy that they had previously consented to.[5]

### E.   Intentional Infliction of Emotional Distress

In evaluating on summary judgment a claim for emotional distress, the court must determine: "(1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected

---

[5] Plaintiffs have also asserted that summary judgment on their behalf is appropriate under the theory of equitable conversion or subrogation. Plaintiffs failed to preserve these issues in the pretrial order. They are therefore deemed waived since the pretrial order controls the subsequent course of the case. Fed. R. Civ. P. 16(e); D.Kan. Rule 16.2(c).

to endure it." Roberts v. Saylor, 230 Kan. 289, 292-293, 637 P.2d 1175 (1981).  Conduct is sufficient to satisfy this test when it is so outrageous and extreme in degree "as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." Fusaro v. First Family Mortgage Corp., 257 Kan. 794, 805, 897 P.2d 123 (1995).  Kansas courts have repeatedly stated that liability may be found when "the recitation of the facts to an average citizen would arouse resentment against the actor and lead that citizen to spontaneously exclaim, 'Outrageous!'" Id.

Plaintiffs have failed to respond to AGF's motion for summary judgment on this claim.  While, "a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party. The district court must make the additional determination that judgment for the moving party is 'appropriate' under Rule 56." Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002).

Kansas courts have held that creditors may take reasonable action to pursue their debtors and persuade payment, but any conduct which exceeds the bounds of reasonableness may give rise for an action in tort. Dawson v. Assocs. Fin. Servs. Co. of Kansas, Inc., 215 Kan. 814, 821, 529 P.2d 104, 110-111 (1974). Recently, this court has held that "[a]ccusing the debtor of federal offenses, impliedly threatening to initiate criminal charges, personally attacking the debtor's manhood and maturity, threatening lawsuits and liens on all property, and threatening to tell all other creditors about his situation, all of which was said during two telephone calls, exceed the bounds of reasonable debt collection methods and could reasonably be termed

extreme and outrageous conduct in the context of this case." Caputo v. Prof'l Recovery Servs, Inc., 261 F. Supp.2d 1249, 1267 (D. Kan. 2003). As previously discussed, the court is only aware of the amount of calls made by defendant. Even though seventeen calls in one week might seem excessive to plaintiffs, the court finds they do not amount to outrageous conduct.

Moreover, plaintiffs have wholeheartedly failed to place any facts into evidence to establish emotional distress. Accordingly, AGF's motion for summary judgment on plaintiff's claim for intentional infliction of emotional distress is granted.

## IV. CONCLUSION

Plaintiffs' motion for summary judgment is DENIED in its entirety. Defendant's motion for summary judgment on plaintiffs' claim for an accounting is DENIED. Defendant's motion for summary judgment on plaintiffs' RESPA claims is GRANTED. Defendant's motion for summary judgment on plaintiffs' KCPA claims is GRANTED as to the allegations of harassment but DENIED as to all other claims. Defendant's motion for summary judgment on plaintiffs' claim for conversion is DENIED. Defendant's motion for summary judgment on plaintiffs' claim for intentional infliction of emotional distress is GRANTED.

IT IS SO ORDERED.

Dated this __6th__ day of July 2005, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-14-

-15-